IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 19-03048-01/02-CR-S-BCW |
| ) | |
| BONTIEA BERNEDETTE GOSS *et. al.*, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss Indictment Based on Prosecutorial Misconduct with Regard to Grand Jury Proceedings filed jointly by Defendants Bontiea B. Goss ("Mrs. Goss") and Tommy R. Goss ("Mr. Goss"). (Doc. 103.) After full consideration of the legal arguments advanced by the parties, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

### I.   Background

On November 6, 2019, a grand jury returned a 35-count indictment against Mrs. Goss and Mr. Goss. Mrs. Goss was charged in 24 counts and Mr. Goss in 27 counts, including charges for: wire-fraud conspiracy, in violation of 18 U.S.C. § 371; federal funds theft and bribery, in violation of 18 U.S.C. §§ 666 and 2; wire and honest services fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2; aiding and assisting in the filing of false tax returns, in violation of 26 U.S.C. § 7206(2); and structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3).

On July 26, 2021, Defendants filed a motion for leave to file pretrial motions out of time, which was granted as unopposed. On August 10, 2021, Defendants filed the Motion, which has been fully briefed by the parties. On February 8, 2022, the undersigned heard oral argument on this and other pending motions. Mrs. Goss appeared in person with her attorneys, Melanie Morgan

1

and Branden Bell, Mr. Goss appeared in person with his attorneys, Christopher Plumlee, Lisa Geary, and Wendy Johnson, and the Government was represented by Marco Palmieri, Randy Eggert, Shannon Kempf, and Stephanie Mazzanti.

## II. Discussion

In the Motion, Defendants move to dismiss the indictment based on the improper disclosure of secret grand jury materials and misconduct regarding the grand jury process. Defendants argue that the Government violated Rule 6(e) by improperly disclosing protected grand jury materials to witnesses. Specifically, Defendants contend that the Government presented confidential financial records to over 50 lay witnesses, who would not have seen the records but for the Government's disclosure. Defendants further argue that such misconduct tainted the grand jury proceedings and raises grave doubts about the validity of the indictment, claiming that the Government's presentation had a strong influence on Lois Craighead, a board member of the Charity[1] who later testified before the grand jury that returned the original indictment. At a minimum, according to Defendants, the Court should preclude the Government from calling the tainted witnesses at trial and provide an adverse-inference instruction.

### a. Applicable Law

The United States Supreme Court has consistently observed that "secrecy ensures the grand jury fulfills its dual function as both a sword and shield of American criminal law, ferreting out crimes deserving of prosecution and screening out charges not warranting prosecution." *Doe v. Bell*, 969 F.3d 883, 891 (8th Cir. 2020) (cleaned up); *see e.g. United States v. Sells Engr., Inc.*, 463 U.S. 418, 424 (1983) ("Grand jury secrecy, then, is as important for the protection of the innocent as for the pursuit of the guilty."). However, the policy of secrecy surrounding grand jury

---

[1] The Charity is Preferred Family Healthcare, Inc. (PFH) a Missouri nonprofit corporation headquartered in Springfield, Missouri. The Charity herein refers to the "entity" known as PFH after April 30, 2015, and known as Alternative Opportunities, Inc. (AO) prior to May 1, 2015. Doc. 65 at 2, ¶1.

proceedings is not absolute. "It is designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." *In re Grand Jury Proceedings Relative to Perl*, 838 F.2d 304, 306 (8th Cir. 1988) (citation omitted) (hereinafter "*Perl*").

Rule 6(e) of Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy against disclosures. Paragraph 6(e)(2) enumerates classes of persons, including grand jurors, government attorneys, government personnel, and other parties attached to the grand jury (e.g., transcriptionist, court reporter, or recording device operator) that are forbidden from disclosing "a matter occurring before the grand jury." *See also Sells*, 463 U.S. at 425. Paragraph 6(e)(3) sets forth exceptions, detailing permitted disclosures. Relevant here,

> [s]ubparagraph 6(e)(3)(A) contains two authorizations for disclosure *as a matter of course, without any court order*. First, under subparagraph 6(e)(3)(A)(i), disclosure may be made without a court order to an attorney for the government for use in the performance of such attorney's duty . . . Second, under subparagraph 6(e)(3)(A)(ii), grand jury materials may likewise be provided to government personnel who assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law . . . Subparagraph 6(e)(3)(B) further regulates (A)(ii) disclosure, forbidding use of grand jury materials by government personnel for any purpose other than assisting an attorney for the Government in his enforcement of criminal law, and requiring that the names of such personnel be provided to the district court.

*Id.* at 426–27 (emphasis added) (cleaned up). The advisory committee notes explain that subparagraph 6(e)(3)(B) imposes upon the attorney for the government the responsibility to certify to the district court that she has advised *any government personnel* to whom disclosures were made under subparagraph (e)(3)(A)(ii) of their obligation of secrecy under Rule 6. Fed. R. Crim. P. 6(e)(3)(B) advisory committee note to 1985 amendments. The notes also indicate that "the rule does not impose any obligations of secrecy on witnesses." Fed. R. Crim. P. 6(e) advisory committee note to 1944 adoption.

Generally, "[g]rand jury proceedings are afforded a strong presumption of regularity, and

3

a defendant seeking to overcome that presumption faces a heavy burden." *United States v. Wadlington*, 233 F.3d 1067, 1073 (8th Cir. 2000). "[T]he drastic step of dismissing an indictment is a disfavored remedy," thus, where prosecutorial misconduct is alleged, a district court may only dismiss an indictment if the defendant demonstrates both flagrant misconduct and substantial prejudice. *See United States v. Manthei,* 979 F.2d 124, 126–27 (8th Cir. 1992); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (noting that "dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations") (cleaned up). "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Wadlington*, 233 F.3d at 1074 (citation omitted).

      **b. Conclusions of Law**

Reviewing the parties' briefing and applicable law, the undersigned concludes that Defendants have failed to demonstrate sufficient prejudice to justify a dismissal or any other remedy. Here, the principal question is whether the documents or information (possibly acquired through a grand jury subpoena) constitute "matters occurring before the grand jury" or grand jury materials requiring secrecy. The undersigned finds that none of the documents or information revealed were "grand jury material" covered by Rule 6(e) governing disclosure of "grand jury matters" because documents (such as business records) are not intrinsically secret simply because they were subpoenaed by or presented to a grand jury. Moreover, Defendants have not presented any specific allegation of misconduct or misuse wherein the Government (via its attorneys, agents, or other personnel) disclosed "the essence of what [took] place in the grand jury room" or revealed to any lay witness that a grand jury was investigating Defendants or that any disclosed documents or information were acquired through a grand jury subpoena. *See Perl*, 838 F. 3d at 306.

4

Federal circuit courts differ in approaches to grand jury secrecy. The Eighth Circuit focuses on "effect"—whether disclosure of a particular item will reveal some secret aspect of the inner workings of the grand jury. *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1413 (9th Cir. 1993) (citing *Perl*, 838 F.2d at 306–07). In *Perl*, the Eighth Circuit held that "unless a document reveals something about the intricate workings of the grand jury itself, the documents are not intrinsically secret just because they were examined by a grand jury." 838 F.2d at 306. The Eighth Circuit further noted that "[d]ocuments such as business records are created for purposes independent of grand jury investigations, and such records have many legitimate uses unrelated to the substance of the grand jury proceedings." *Id.* at 306–07. However, while documents such as business records are less likely to impinge upon the policy underlying grand jury secrecy, "the disclosure of these documents reveals 'at the very least, the direction of the grand jury's investigation and the names of persons involved, and thus falls within Rule 6(e)(2)'" requiring a "particularized need showing" for use in a subsequent judicial proceeding. *See id.* at 305, 307; *see also Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, (1979) (explaining the particularized need showing required for use of grand jury material in subsequent judicial proceedings). Nevertheless, as noted earlier, the Eighth Circuit provides that grand jury secrecy "is designed to protect from disclosure only the essence of what takes place in the grand jury room." *See Perl*, 838 F.2d at 306. The Ninth and Second Circuits agree, noting further that Rule 6(e) "is intended only to protect against disclosure of what is said or takes place in the grand jury room" and thus, "if a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release." *Dynavac*, 6 F.3d at 1411-12.

Defendants advocate for a broader view of "grand jury material," citing persuasive authority which finds that the disclosure of the names and subjects of the investigation, direction

5

and strategy of the investigation, and specific charges may be deemed "inner workings of the grand jury." *See e.g., Fund for Constitutional Govt. v. Natl. Archives and Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (stating that the scope of grand jury secrecy is broad, encompassing not only grand jury transcripts but also the disclosure of information which would reveal the identities of witnesses or jurors, the substance of testimony, or the strategy or direction of the investigation). Defendants thus contend that the Government's disclosures (via documents and information obtained through grand jury subpoena) improperly revealed to witnesses (1) the names and subjects of the investigation (including Defendants), (2) the direction and strategy of the investigation, and (3) the specific charges the Government intended to bring. (Doc. 132 at 7.) As examples of alleged misconduct, Defendants highlight interviews with 10 of 12 Charity board members between 2017 and 2019 where the Government used PowerPoints, initially comprised of 39 slides, then 51 slides, ultimately culminating into 101 slides, which outlined its case. (Docs. 103 at 18.) Defendants argue that the use of the slides, walking through its case against Defendants with the "who, what when, where and why of the investigation," resulted in the Government improperly "tainting witnesses with secret grand-jury information." (Docs. 103 at 19; 132 at 7-8.) However, notably, Defendants have made no showing that the use of any documents or PowerPoints in investigative interviews revealed the inner workings of the grand jury proceedings, e.g., that the government agents or attorneys *in fact* revealed to witnesses that documents or information were obtained through a grand jury subpoena or Defendants were the targets of a grand jury investigation.

      Mere allegations that certain documents or PowerPoints may have influenced colleagues or friends does not support a finding that the Government "coerced" or "improperly persuaded" the witnesses. And, the fact that certain documents or information obtained via grand jury subpoena was used to ascertain witnesses' knowledge of and involvement in alleged crimes, a

6

routine investigatory practice, does not mean that the witnesses were *notified* that the information presented was obtained through a grand jury. A review of the 20 exhibits offered in support by Defendants also does not substantiate any claims of misuse of grand jury materials, as none of the exhibits reveal that any of the material was *in fact before a grand jury.* Additionally, investigation of the Charity board members, particularly as to each member's knowledge and consent of certain actions, is highly relevant to the grand jury's consideration of the issues and whether there is a defense to Defendants' alleged crimes. *See e.g., United States v. Beran*, 546 F. 2d 1316, 1321 (8th Cir. 1976) ("The valid consent of the board of directors is a defense to the crime of misapplication of bank funds.").

Even in *Fund for Constitutional Government*, the seminal case cited by Defendants supporting a broader view of grand jury material, the D.C. Circuit noted that "[t]he relevant inquiry is . . . whether revelation [of documents or information] in the particular context *would in fact reveal what was before the grand jury." Id.* at 870 (emphasis added); *see also id.* ("The fact that a grand jury has subpoenaed documents concerning a particular matter does not insulate that matter from investigation in another forum.") (citation omitted).[2] The undersigned agrees that this is the relevant inquiry. At issue is not whether Defendants are "under investigation" generally and whether that fact was revealed to witnesses, but rather whether the Government's alleged use of documents and information in context *in fact* revealed what was before the grand jury, that is, that Defendants were under investigation *by a grand jury.* To conclude otherwise would lead to absurd results, handicapping all white-collar criminal investigation once an initial presentation is made to a grand jury and insulating any defendants from any further investigation. Such interpretation

---

[2] The D.C. Circuit also noted a distinction between documents created for an independent corporate purpose, and not directly related to the prospect of a grand jury investigation. *Fund for Constitutional Govt*, 656 F.2d at 870. Ultimately, the court there held that the documents at issue, however, were not obtained for any independent purpose, and thus, were exempt from disclosure under the Freedom of Information Act. *Id.*

7

would also be inconsistent with the purpose for which government attorneys and personnel are permitted disclosure of grand jury matters—to enforce federal criminal law. *In re Grand Jury Subpoenas Dated Feb. 28, 2002, March 26, 2003, Oct. 4, 2004*, 472 F.3d 990, 999 (8th Cir. 2007) ("In order to violate [ R]ule [6(e)], there must be evidence that the knowledge of matters before the grand jury held by the investigator has been put to use in some way other than to further the criminal investigation."). The Supreme Court in *Sells* explains:

> a modern grand jury would be much less effective without the assistance of the prosecutor's office and the investigative resources it commands. The prosecutor ordinarily brings matters to the attention of the grand jury and gathers the evidence required for the jury's consideration. Although the grand jury may itself decide to investigate a matter or to seek certain evidence, it depends largely on the prosecutor's office to secure the evidence or witnesses it requires.

463 U.S. at 430.

As further support, Defendants cite *In re Doe* for the proposition that a photograph of a defendant obtained at the direction of a grand jury was deemed "grand jury material" under Rule 6(e). However, in that case, the district court permitted agents to use the photograph, and ordered the government attorneys to advise agents that "persons who are shown the photograph should not be told that Doe is under investigation by a grand jury." 678 F. Supp. 186, 187 (N.D. Ill. 1988). Moreover, the photograph at issue was taken at the direction of the grand jury, unlike business records at issue here (e.g., cancelled checks and emails) which arguably, serve purposes independent of grand jury investigation. Moreover, it should be noted that most of the case law addressing grand jury secrecy issues involves circumstances where grand jury material is requested for use in a subsequent investigation or separate judicial proceeding, whereas here, the material at issue involves the same criminal investigation and proceeding. Accordingly, considering Defendants have offered no evidence (even in the 20 exhibits) to show that the Government revealed to any witness that Defendants were in fact under *grand jury* investigation and, further, that many of the documents at issue were business records with an independent purpose and not

8

intrinsically secret, the undersigned concludes that the Government did not reveal the "intricate workings of the grand jury." Furthermore, any factual disputes regarding any information presented to witnesses or challenges to potential witnesses' personal knowledge are matters to be addressed at trial. Accordingly, any adverse instruction or preclusion of witnesses would be inappropriate at this stage.

Defendants also request that the "6(e) list" be reviewed *in camera* by the Court or by the parties to ensure that witnesses "who are shown grand jury materials" were properly admonished as to the secrecy of grand jury matters. (Doc. 152 at 35.) However, the request represents a fundamental misunderstanding of the rule. Disclosures under subparagraph 6(e)(3)(A) and (B) are permitted as a matter of course and without a court order, but strictly limited to government attorneys and government personnel assisting in the attorneys' duty to enforce federal criminal law, as the Government acknowledges. (Doc. 125 at 9, fn 2.) As such, the list would and should not include any lay witnesses. Furthermore, if the list did include lay witnesses, this would actually result in less protection for Defendants, as it would guarantee that each lay witness to whom such admonition of secrecy was made would know that the documents or information revealed were *acquired through a grand jury subpoena* and that Defendants are the *possible targets of a grand jury investigation* supplanting their general understanding that Defendants were simply under "some" type of investigation. *See e.g., In re Doe*, 678 F. Supp. at 188. Regardless, here, the undersigned has already found that the Government did not disclose grand jury matters to witnesses because any information disclosed did not reveal the intricate workings of the grand jury (e.g., that Defendants were under a *grand jury* investigation or information was acquired via the grand jury), and Defendants have not demonstrated any evidence to the contrary.

Accordingly, the undersigned concludes that there was no improper disclosure of protected grand jury matters, and Defendants have failed to demonstrate any violation to support a claim of

prosecutorial misconduct. Even assuming, *arguendo*, a violation did occur, Defendant's claims of the Government's alleged misconduct or misuse of information do not arise to flagrant misconduct or substantial prejudice (e.g., the Government here did not affirm false testimony to the grand jury or leak grand jury information to the press) raising grave doubts about the grand jury's decision to indict. *See Barry v. United* States, 865 F. 2d 1317, 1321 (D.C. Cir. 1989) (finding a violation of Rule 6(e)(2) where the government attorneys and agents leaked information to the press about matters occurring before the grand jury); *United States v. Cooper*, 396 F. Supp. 3d 992, 997 (D. Kan. 2019) (finding prosecutorial misconduct where the government knowingly affirmed false testimony before the grand jury). Therefore, the relief requested should be **DENIED**.

### III. Recommendation

Based on the foregoing, it is hereby **RECOMMENDED** that the Joint Motion to Dismiss Indictment Based on Prosecutorial Misconduct with Regard to Grand Jury Proceedings (doc. 103) be **DENIED**.

*/s/ David P. Rush*
**DAVID P. RUSH,**
**UNITED STATES MAGISTRATE JUDGE**

Date: May 24, 2022