IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  19-03048-01/02-CR-S-BCW |
| | ) | |
| BONTIEA BERNEDETTE GOSS *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

Before the Court is the Motion to Dismiss Fraud Counts for Failure to State an Offense filed jointly by Defendants Bontiea B. Goss ("Mrs. Goss") and Tommy R. Goss ("Mr. Goss"). (Doc. 101.) After full consideration of the legal arguments advanced by the parties, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

**I.   Background**

On March 29, 2019, a grand jury returned a 32-count indictment against Mrs. Goss, Mr. Goss, and co-defendant Jeremy Young Hutchinson, an attorney and Arkansas state senator from 2011 to 2018. On November 6, 2019, a grand jury returned a 35-count superseding indictment against Defendants.  Mrs. Goss was charged in 24 counts and Mr. Goss in 27 counts, including charges for: wire-fraud conspiracy, in violation of 18 U.S.C. § 371; federal funds theft and bribery, in violation of 18 U.S.C. §§ 666 and 2; wire and honest services fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2; aiding and assisting in the filing of false tax returns, in violation of 26 U.S.C. § 7206(2); and structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3).

On July 26, 2021, Defendants filed a motion for leave to file pretrial motions out of time, which was granted as unopposed.  On August 10, 2021, Defendants filed the Motion, which has

1

been fully briefed by the parties. On February 8, 2022, the undersigned heard oral argument on this and other pending motions. Mrs. Goss appeared in person with her attorneys, Melanie Morgan and Branden Bell, Mr. Goss appeared in person with his attorneys, Christopher Plumlee, Lisa Geary, and Wendy Johnson, and the Government was represented by Marco Palmieri, Randy Eggert, Shannon Kempf, and Stephanie Mazzanti.

## II. Applicable Law

The right to be charged by a grand jury in an indictment is guaranteed by the United States Constitution for certain crimes. The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Sixth Amendment further guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and the cause of the accusation." U.S. Const. amend. VI. These Constitutional requirements are implemented by Rule 7(c) of the Federal Rules of Criminal Procedure, which specifies that "the indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

In evaluating motions to dismiss an indictment for insufficiency, the Court makes its determination from the face of a criminal indictment. There is no summary judgment procedure in criminal cases nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995). The Court's review is limited to the four corners of the indictment, accepting the Government's allegations as true. *See United States v. Steffen*, 687 F.3d 1104, 1007 n.2 (8th Cir. 2012). An indictment is legally sufficient on its face if (1) it contains all the essential elements of the offense charged, (2) fairly informs the defendant of the charges against which he must defend, and (3) alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. *Id.* at

2

1109. A slightly greater level of detail is required for the bank, mail, or wire fraud statutes, for which an indictment must "specify facts . . . with such reasonable particularity as will apprise the defendant, with reasonable certainty, of the nature of the accusation and as will enable the court to say that the facts stated are sufficient in law to support a conviction." *Id.* at 1113 (cleaned up).

"An indictment which tracks the statutory language is ordinarily sufficient." *United States v. Prelogar*, 996 F.3d 526, 531 (8th Cir. 2021) (cleaned up). "An indictment should not be read in a hyper technical fashion and should be deemed sufficient unless no reasonable construction can be said to charge the offense." *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir. 1998) (cleaned up); *see also United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). The indictment may set out the elements in the words of the statute itself, if "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Nabors*, 45 F. 3d at 240. It is not necessary, however, "that a particular word or phrase appear in the indictment when the element is alleged in a form which substantially states the element." *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir. 1988) (cleaned up). "An indictment will ordinarily be held sufficient unless it is so defective" that no reasonable construction could charge the offense. *Sewell,* 513 F.3d at 821.

### III. Discussion

In the Motion, Defendants move to dismiss portions of count 1, as well as counts 17, 21, 23-27, and 29-30, arguing the indictment lacks factual allegations that, if proven, would sustain a conviction for the charged offenses of honest-services fraud and wire fraud. Specifically, Defendants assert that honest-services fraud and wire fraud counts both require "a scheme to defraud," consisting of either affirmative misrepresentation or active (or passive) concealment, but that the challenged counts do not allege any misrepresentation or concealment. *Id.* at 14. In response, the Government identifies portions of the indictment, *see e.g.,* doc. 65 ¶¶ 65-78, that

3

Case 6:19-cr-03048-BCW    Document 194    Filed 05/24/22    Page 3 of 15

detail factual allegations of affirmative misrepresentations and acts of concealment relevant to the honest services and wire fraud schemes. In their reply, Defendants argue the Government's allegations occurred after the deprivation of property or honest services, and that "post-deprivation misrepresentation or concealments" are insufficient to support the charges because the misrepresentation or concealment must have caused or intended to cause the deprivations. The question of sufficiency turns on the elements of the offense. *See United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir. 2021).

Here, in 78 numbered paragraphs, count 1 of the indictment charges a violation of 18 U.S.C. § 371, alleging two separate schemes where Defendants conspired: (1) "to devise and intend to devise a scheme and artifice to defraud the Charity[1], and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises" in violation of 18 U.S.C. § 1343 and (2) "to devise and intend to devise a scheme to defraud and deprive the citizens of Arkansas of their right to the honest services of [Arkansas state legislators], through bribery and kickbacks," in violation of 18 U.S.C. §§ 1343 and 1346. (Doc. 65 at 18-19, ¶ 66 b and e.) Counts 17 and 21 relate to the honest services scheme[2] while counts 23-27 and counts 29-30 relate to the wire fraud scheme.[3] While preceding allegations are properly re-incorporated into each subsequent count, the table below summarizes key transmission(s) for each challenged count:

| Count | Description |
|---|---|
| 17 | Settlement of $400,000 check (#47663) drawn on Charity account ending in 8747 and deposited to NWAEEDD's Legislative Funds[4] account ending in 8611 |
| 21 | Email from Mrs. Goss to Charity's outside counsel attaching "Engagement Letter" signed by Mrs. Goss and Senator Hutchinson |
| 23 | Settlement of $150,000 check (#91293) drawn on Charity account ending in 2595 and |

---

[1] The Charity is Preferred Family Healthcare, Inc. (PFH) a Missouri nonprofit corporation headquartered in Springfield, Missouri. The Charity herein refers to the "entity" known as PFH after April 30, 2015, and known as Alternative Opportunities, Inc. (AO) prior to May 1, 2015. Doc. 65 at 2, ¶1.
[2] Count 17 charges Defendants jointly while count 21 only charges Mrs. Goss.
[3] Counts 23, 24, 25, 27, and 29 charge Mr. Goss and counts 26 and 30 charge Defendants jointly.
[4] Northwest Arkansas Economic Development District (NWAEDD) was one of the economic districts authorized to receive state funds, and included the following counties: Benton, Washington, Madison, Carroll, Boone, Newton, Marion, Searcy, and Baxter.

| | |
|---|---|
| | deposited to Cranford Coalition (CC) account ending in 2316 |
| 24 | Settlement of $187,175 check (#91508) drawn on Charity account ending in 2595 and deposited to CC account ending in 2316 |
| 25 | Settlement of $75,000 check (#2320) and $85,000 check (#2321) drawn on CC account ending in 2316 and deposited to Defendants' account ending in 9278 |
| 26 | Email exchange between Defendants and others (including Person #21) regarding Entity E's rental of a warehouse in Springfield, Missouri. Mr. Goss informed Person #21 that the warehouse was "Ok for free rent" and Mrs. Goss stated she supported |
| 27 | Mr. Goss' text to Cranford stating: "That will work. Hey from now on just send me 30% cash and you keep the rest for tax on Cranford stuff. That gives you 40% of my half for tax. That way I don't get 1099 and you aren't short on tax." |
| 29 | Settlement of $50,000 check (#102839) drawn on Charity account ending in 2595 and deposited to Company C's account ending in 8315 |
| 30 | Settlement of $21,036.43 check (#117502) drawn on Charity account ending in 3587 and deposited to Company C's account ending in 8315 |

*See* Fed. R. Crim. P. 7(c)(1) ("A count [in an indictment] may incorporate by reference an allegation made in another count."). (Doc. 65 at 86-90.)

The wire-fraud statute, 18 U.S.C. § 1343, in relevant part, states:

[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years.

The honest-services fraud statute, 18 U.S.C. § 1346, explains that a "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services. However, charges for honest services wire fraud are limited to schemes involving bribery and kickbacks. *See Richter v. Adv. Auto Parts, Inc.*, 686 F.3d 847, 856 (8th Cir. 2012) (explaining that 18 U.S.C. § 1346 includes the offense of honest-services fraud only as applied to bribery and kickback schemes) (citing *Skilling v. United States*, 561 U.S. 358, 410 (2010)).

Consistent with the statutory language, to support a conviction for wire fraud, the Government must prove: (1) intent to defraud, (2) participation in a scheme to defraud, and (3) the use of a wire in furtherance of the fraudulent scheme. *United States v. Burns*, 990 F.3d 622, 627 (8th Cir. 2021). To support a conviction under the honest-services wire fraud statute, the

5

Government must prove: Defendants (1) voluntarily and intentionally devised or participated in a scheme to defraud the public of its right to the honest services of a public official through bribery or kickbacks; (2) with the intent to defraud; (3) where the scheme to defraud involved a fraudulent or false material representation or concealment of fact; and (4) the use of an interstate wire in furtherance of, or in an attempt to carry out, some essential step in the scheme. *See United States v. Woods*, 978 F.3d 554, 563 (8th Cir. 2020); *see also* Model Crim. Jury Instr. 8th Cir. 6.18.1346 (2020) (instruction for 18 U.S.C. § 1346).

The central issue in this case is whether the indictment sufficiently alleged a "scheme or artifice to defraud," as required for honest-services wire fraud and wire fraud charges. The Eighth Circuit has held that the crime of wire fraud is "broad in scope," does not require false representations, and the "fraudulent aspect of the scheme to 'defraud' is measured by a nontechnical standard," and may include "widely diverse schemes." *United States v. Gilbertson*, 970 F.3d 939, 947 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2793 (2021) (citations omitted).

Generally, a "scheme to defraud" requires either affirmative misrepresentation, active concealment, or passive concealment of material information. *See United States v. Luna*, 968 F.3d 922, 926 (8th Cir. 2020) ("'To defraud' someone requires material, affirmative misrepresentations or active concealment of material information for the purpose of inducing action."); *Steffen*, 687 F.3d at 1115-16. Active concealment involves "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." *Steffen*, 687 F.3d at 1114-15. Whereas passive concealment only constitutes a "scheme to defraud" where there is a fiduciary or statutory duty to disclose. *Id.* at 1115-16. And information is "material" if it has "a natural tendency to influence, or is capable of influencing, the decision of a reasonable person in deciding whether to engage or not to engage in a particular transaction." *United States v. Kidd*, 963 F.3d 742, 747 (8th Cir. 2020).

6

Defendants highlight that in *Steffen,* the Eighth Circuit distinguishes between "nondisclosure" and "concealment" and that active concealment involves "the requisite intent to mislead by creating a false impression or representation." *Steffen*, 687 F.3d. at 1114-15 ("Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does."). There, the court found there was no "concealment" because "[t]he indictment [] alleged no actions undertaken by the defendant to hide the sale of the collateral from the Bank's discovery" and "the *only* alleged 'act' to conceal was [the defendant]'s silence about the sale to the Bank, which is insufficient to show a scheme to defraud." *Id.* (emphasis added.) Defendants' case is markedly different to *Steffen*, considering the Government here details several acts of "theft, embezzlement, fraud, and conversion," "intentional misapplication," "bribery," and "concealment" spanning six pages of the indictment and further, provides 52 pages of overt acts involved in the two schemes, all of which are properly re-incorporated into each of the challenged counts. (Doc. 65 ¶¶ 75-78, 91, 93, 95, 97.) Accordingly, based on a thorough review of the indictment and accepting the Government's allegations as true, the undersigned finds each of the challenged counts sufficiently alleges "a scheme to defraud." The report will briefly address the challenged counts in turn.

| Count | Description |
|-------|-------------|
| 17 | Settlement of $400,000 check (#476663) drawn on Charity account ending in 8747 and deposited to NWAEEDD's Legislative Funds account ending in 8611 |

As to Count 17, Defendants contend the indictment does not contain any facts that amount to active concealment or deceptive acts to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter. (Docs. 65 ¶ 94, 101 at 23.) The undersigned disagrees. *See e.g.* doc. Doc. 65 ¶¶ 53, 77, 78 R1-R30, X1-X6. On top of several allegations of misrepresentation on IRS Forms and concealment of payments to legislators (who were co-conspirators), the

indictment specifically alleges that these co-conspirator legislators steered $400,000 in General Improvement Funds (GIF) funds to Ameriworks, and Defendants prepared documents to justify the funds as "startup cost." However, after a co-conspirator (Rusty Cranford) was interviewed by federal law enforcement officers regarding dealings with the legislators, Mr. Cranford and Mr. Goss, "in an effort to conceal the bribery scheme," directed the $400,000 that Ameriworks received in GIF funds to be returned. (Doc. 65 ¶¶ 77, 78 R1, R7, R21, R30, X2.) These allegations sufficiently describe "active concealment" by Defendants "to avoid suspicion or prevent further inquiry." Defendants may disagree on the interpretation of the facts alleged or on the sufficiency of the evidence, but those matters fall squarely in the province of the fact finder and can be addressed at trial. *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016) ("Good cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that fall within the province of the ultimate finder of fact.") (cleaned up).

| Count | Description |
|---|---|
| 21 | Email from Mrs. Goss to Charity's outside counsel attaching "Engagement Letter" signed by Mrs. Goss and Senator Hutchinson |

Regarding Count 21, Defendants argue that affirmative misrepresentation or active concealment is not sufficiently alleged because the indictment does not claim that Mrs. Goss asserted a fact while knowing it was not true, e.g., she attempted to "pass off the [Hutchinson attorney] engagement letter as the original one" or she knew there was no original contract employing Hutchinson. However, this argument conflates what is required to allege a "scheme to defraud" and wholly disregards specific allegations that Mrs. Goss made affirmative misrepresentations and actively concealed the payment of bribes to codefendant Hutchinson, concealing the payments as "legitimate" payments for legal services to avoid suspicion and prevent further inquiry into the matter. *See e.g., Kidd*, 963 F.3d at 749 ("The defendants [] argue that there is insufficient evidence of a scheme to defraud because they never made false representations

directly to the insurance companies . . . The gravamen of the offense is not a false representation to a victim, but the development of a scheme to defraud.).

Contrary to Defendants' arguments, the indictment sets forth in detail the development of a scheme to defraud the people of Arkansas of the honest services of their legislators, and in particular codefendant Hutchinson, via bribes. As noted earlier, active concealment may include deceptive actions intended *to avoid suspicion or prevent further inquiry* and in assessing the sufficiency of an indictment, the Court accepts the Government's allegations as true. *See Steffen*, 687 F.3d at 1114-15. Here, the Government properly alleges that Defendants paid bribes to co-defendant Hutchinson, that those payments were not disclosed on IRS Forms over several years, and to conceal the unlawful payments, Defendants "caused the Charity's books and records to misrepresent, conceal, and cover up the true nature of the payments, by falsely describing such payments as being for attorney's fees and legal retainers." (Doc. 65 ¶¶ 73e, 75a.) Specifically, relevant to this count, the Government also alleges Mrs. Goss created a "post-hoc" attorney engagement letter to conceal bribe payments to co-defendant Hutchinson and make bribe payments "appear legitimate." *Id.* ¶ 78 O5-O10. The allegation that Mrs. Goss knowingly misrepresented to attorneys for the Charity (to which she arguably also had a fiduciary duty as chief operating officer) that the prior payments to co-defendant Hutchinson were legitimate payments for legal services (as opposed to unlawful payments or bribes) is sufficient to demonstrate "a scheme to defraud" via affirmative misrepresentation of material information and active concealment to prevent further inquiry. *Id.* at ¶ 78 O10. Defendants may disagree about the interpretation of the facts or events alleged or even Mrs. Goss' knowledge, but at this stage, the Court accepts the facts alleged by the Government as true, and any factual disputes are to be addressed at trial.

| Count | Description |
|---|---|
| 23 | Settlement of $150,000 check (#91293) drawn on Charity account ending in 2595 and deposited to Cranford Coalition (CC) account ending in 2316 |
| 24 | Settlement of $187,175 check (#91508) drawn on Charity account ending in 2595 and |

9

| | |
|---|---|
| | deposited to CC account ending in 2316 |
| 25 | Settlement of $75,000 check (#2320) and $85,000 check (#2321) drawn on CC account ending in 2316 and deposited to Defendants' account ending in 9278 |
| 27 | Mr. Goss' text to Cranford stating: "That will work. Hey from now on just send me 30% cash and you keep the rest for tax on Cranford stuff. That gives you 40% of my half for tax. That way I don't get 1099 and you aren't short on tax." |

As to counts 23, 24, 25, and 27 against Mr. Goss, involving payments from the Charity to Cranford Coalition (CC) and from CC to Mr. Goss, Defendants contend that the indictment does not allege "any affirmative misrepresentation made as part of these payments" or "any active concealments—no 'deceptive acts' 'intended to hide information, mislead, avoid suspicion or avert further inquiry…'" (Doc. 101 at 21.) As further support, Defendants argue that the payments to CC were "not hidden or made out to an alias" and that the payments to Mr. Goss were "not marked by deception or contrivance." These arguments are unpersuasive and unsupported by law.

Contrary to Defendants' claim that there must be an affirmative misrepresentation or concealment (and impliedly, a falsehood) *as part of the payment or transmission*, "[t]o violate the wire fraud statute, it is not necessary that the transmitted information include any misrepresentation" nor does the transmission itself need to be "essential to the success of the scheme to defraud." *United States v. Hasson*, 333 F.3d 1264, 1272–73 (11th Cir. 2003) (citing *Schmuck v. United States,* 489 U.S. 705, 715 (1989)). Rather, an interstate wire transmission would be deemed "for the purpose of executing" the scheme to defraud under § 1343, if it is "incident to an essential part of the scheme" or "a step in the plot." *Schmuck*, 489 U.S. 705 at 710–11 (citations omitted). This flows logically because the crime of wire fraud is "broad is scope" and involves "widely diverse schemes" e.g., here, the Government charges Defendants in a complex wire fraud scheme involving numerous transmissions and parties.

These four counts (although only steps in the overall wire fraud scheme) represent undisclosed "excess benefit transactions" between the Charity, CC, and Mr. Goss, wherein the Government alleges Mr. Goss received payments in the form of kickbacks from payments made

by the Charity to CC—an entity serving as an intermediary to conceal the misappropriation of funds by Defendants as executive officers of the Charity to themselves. (Doc. 65 ¶ 48-51, 77, 78 G1-11, X1-X6.) The indictment explains that excess benefit transactions include "any transaction in which an economic benefit was provided by the tax-exempt organization (here, the Charity) directly or indirectly to or for the use of any disqualified person" where the value of economic benefit exceeds the consideration for such benefit. (Doc. 65 ¶ 49a.) And a "disqualified" person is any person who exerts substantial influence over the tax-exempt organization in the five-year period prior to the transaction date and any entity in which a disqualified person owns more than 35% of the voting power. *Id.* ¶ 49b, d. Mr. and Mrs. Goss as officers of the Charity exercising substantial influence over the Charity's affairs are "disqualified persons." *Id.* ¶ 4-5.

As to these counts, the undersigned concludes the Government sufficiently alleged active concealment and/or material misrepresentation constituting "a scheme to defraud." *See e.g.,* Doc. 65 ¶ 48-51, 77, 78 G1-11, X1-X6, 97-98. Specifically, the Government adequately alleges that Mr. Goss directed the Charity to issue two checks to CC (counts 23 and 24), then deposited two checks from the CC (count 25) and sent a text message setting out the structure for the kickback scheme and future payments in cash from the CC to Mr. Goss (count 27). *See e.g., id.* ¶ 78 G1-G11. The indictment also alleges these kickback payments were actively concealed from the Charity by using an intermediary (CC) and transitioning to cash payments to avoid detection. *Id.* As well, these transactions were not disclosed as "excess benefits" on the appropriate tax forms for several years, indicative of a continuous and compound effort to conceal these transactions from further detection or inquiry by interested parties (e.g., board members or the IRS). *See id.* ¶ 78 X1-X5. Any factual disputes as to these allegations are matters for trial.

11

| Count | Description |
|---|---|
| 26 | Email exchange between Defendants and others (including Person #21) regarding Entity E's rental of a warehouse in Springfield, Missouri. Mr. Goss informed Person #21 that the warehouse was "Ok for free rent" and Mrs. Goss also stated she supported |

As to Count 26, Defendants again argue that the indictment does not allege any active concealment or affirmative misrepresentation *were made as part of this agreement*. (Doc. 101 at 27.) Again, the undersigned notes that to violate the wire fraud statute, the transmitted information need not include any misrepresentation as part of the email exchange and rather, the transmission is "for the purpose of executing" a scheme to defraud if it is a "incident to an essential part" or step in the fraudulent scheme. *See Schmuck*, 489 U.S. 705 at 710–11, 715.

The undersigned again concludes the indictment sufficiently alleges affirmative misrepresentation and active concealment regarding the Charity's payments of Entity E's warehouse rent. Specifically, the Government here alleges: Entity E was in the business of indoor thermostats; Defendants were officers and board members of Entity E with a combined ownership share which amounted to 45%; the Charity's funds and property were used to benefit Entity E, despite being a "disqualified person" given Defendants' position as Charity officers and ownership share in Entity E of greater than 35%; to conceal the embezzlement and intentional misapplication of funds, Defendants caused the Charity to file tax forms and grant applications with federal and state agencies containing false statements and material omissions regarding the Charity's political campaign activities, expenditures, excess benefit transactions and lobbying activities; the Charity paid a total of $132,500 for the lease of a warehouse from July 2014 to August 2017; and in February 2015, Mrs. Goss caused the Charity to enter into a Memorandum of Understanding (MOU) with Entity E, agreeing for the Charity to pay Entity E monthly payments for "training services," and the MOU was backdated to falsely reflect a signature date of July 1, 2014. *See* Doc. 65 ¶ 27, 51, 72c, 75b, 78 D1-D4, X1-X6. Although only "steps" in the overall fraudulent scheme, count 26 highlights an email exchange wherein Defendants and other individuals agreed on the

12

arrangement to allow Entity E free rental of a warehouse in Springfield, Missouri, ultimately on the Charity's bill, despite no connection to the Charity's affairs. *Id.* at 90 ¶ 98. To actively conceal or rather "to avoid suspicion or avert further inquiry" into the rental or lobbying activities by Entity E, these transactions were not reported on tax forms, and further, Mrs. Goss affirmatively misrepresented and actively concealed the rental payments by causing the Charity to enter into a backdated MOU, characterizing the rent payments as for "training services." Any disputes as to these interpretations of these facts are matters for trial.

| Count | Description |
|---|---|
| 29 | Settlement of $50,000 check (#102839) drawn on Charity account ending in 2595 and deposited to Company C's account ending in 8315 |
| 30 | Settlement of $21,036.43 check (#117502) drawn on Charity account ending in 3587 and deposited to Company C's account ending in 8315 |

Regarding counts 29 and 30, Defendants similarly argue that the indictment fails to allege a misrepresentation or active concealment *related to the charter air flights*. (Doc. 101 at 27.) Defendants contend that the indictment only alleges that "the payments occurred" rather than that that Mrs. Goss "created a fictional justification (an affirmative misrepresentation)" for the Charity to pay for these flights or that Mr. Goss "tr[ied] to hide the evidence of these payments by using his position as CFO to classify them as something other than what they were (a deceptive act to hide them)." *Id.* at 27-28. As before, contrary to Defendants' arguments, the payments need not involve falsehoods, as the payments to Company C can be deemed "for the purpose of executing" a scheme to defraud since it is a "incident to an essential part" or step in the fraudulent scheme. *See Schmuck*, 489 U.S. at 705, 715; *Kidd*, 963 F.3d at 749 ("The gravamen of the offense is not a false representation to a victim, but the development of a scheme to defraud.).

As to these two counts, the undersigned also concludes the indictment sufficiently alleges affirmative misrepresentation and active concealment. Specifically, the Government alleges that Defendants and others obtained by fraud and without authority, the property and money of the

Charity; Defendants caused the Charity to spend its funds for charter air flights for their commute between their Colorado home and the Charity's Missouri office as well as for the personal travel of their family members and pets, as well as for Mr. Goss' business travel related to work with Entity E; to conceal the embezzlement and intentional misapplication of funds, Defendants caused the Charity to file tax forms and grant applications with federal and state agencies containing false statements and material omissions regarding the Charity's political campaign activities, expenditures, excess benefit transactions and lobbying activities; between 2013 and 2017, as expenses not in furtherance of the Charity's mission and an un-taxed benefit to themselves, Defendants caused the Charity to spend over $300,000 for charter air flights through Company C; the costs associated with these flights, despite the personal nature of the flights, were not included as compensation on any W-2 forms to Defendants or others; and, on March 14, 2016, Mr. Goss caused the Charity to file tax forms for July 1, 2014 to April 30, 2015, providing supplemental information for Schedule J falsely stating, "ALL CHARTER TRAVEL PROVIDED WAS FOR BUSINESS PURPOSES ONLY, THEREFORE THE VALUE OF SUCH TRAVEL WAS NOT INCLUDED AS TAXABLE COMPENSATION."

In a similar fashion, although only "steps" in the overall scheme, counts 29 (charging Mr. Goss) and 30 (charging Defendants jointly) covers wire transmissions to Company C for charter air flights, paid for by the Charity at the direction of Defendants, allegedly for non-Charity related purposes. To actively conceal or rather "to avoid suspicion or avert further inquiry" into these charter flights, these transactions or benefits for personal use were not reported on tax forms, and further, Mr. Goss affirmatively misrepresented and actively concealed the charter travel payments by causing the Charity to file a supplemental section to its Schedule J, falsely characterizing the charter travel "as for business purposes only." Defendants may disagree as to the interpretation of events, however, any factual dispute as to these allegations are trial matters.

Finally, regarding Defendants' argument that "post-deprivation misrepresentations or concealments are insufficient" to allege a scheme to defraud, the undersigned notes that, here, the complex schemes alleged were ongoing and continuous over a period of several years, and each of the transmissions in the challenged counts were a step in the plot or incident to an essential part of the scheme. Thus, the object of the fraudulent schemes—depriving the citizens of Arkansas of their right to the honest services of their state legislators through bribery and kickbacks and obtaining money or property of the Charity by false or fraudulent means—was not complete after a single transmission, and rather, the material misrepresentations and concealments were continuous to "avoid suspicion and avert further inquiry" so that further frauds which were part of the schemes could be perpetrated. Additionally, as already discussed, the indictment provides several examples of misrepresentations and concealments relevant to specific counts. In any case, a particular word or phrase is not required where the element is alleged in a form which substantially states the element. Moreover, an indictment is not to be read in a hyper technical fashion, and is deemed sufficient unless no reasonable construction can charge the offense. Accordingly, in examining the four corners of the indictment, accepting the allegations therein as true, the undersigned finds that the Government has sufficiently alleged "a scheme to defraud" as required for counts 1, 17, 21, 23-27, and 29-30. As a result, the Joint Motion to Dismiss Fraud Counts for Failure to State an Offense (doc. 101) should be **DENIED**.

### IV. Conclusion

Based on the foregoing, it is hereby **RECOMMENDED** that the Court enter an order **DENYING** the Joint Motion to Dismiss Fraud Counts for Failure to State an Offense (doc. 101).

*/s/ David P. Rush*
**DAVID P. RUSH,**
**UNITED STATES MAGISTRATE JUDGE**

Date: May 24, 2022