# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 19-03048-01/02-CR-S-BCW ) |
| BONTIEA BERNEDETTE GOSS *et. al.*, | ) ) |
| Defendants. | ) ) |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss the General Improvement Funds (GIF) Related Bribery Charges filed jointly by Defendants Bontiea B. Goss ("Mrs. Goss") and Tommy R. Goss ("Mr. Goss"). (Doc. 102.) After full consideration of the legal arguments advanced by the parties, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

### I. Background

On March 29, 2019, a grand jury returned a 32-count indictment against Mrs. Goss, Mr. Goss, and co-defendant Jeremy Young Hutchinson, an attorney and Arkansas state senator from 2011 to 2018. On November 6, 2019, a grand jury returned a 35-count superseding indictment against Defendants. Mrs. Goss was charged in 24 counts and Mr. Goss in 27 counts, including charges for: wire-fraud conspiracy, in violation of 18 U.S.C. § 371; federal funds theft and bribery, in violation of 18 U.S.C. §§ 666 and 2; wire and honest services fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2; aiding and assisting in the filing of false tax returns, in violation of 26 U.S.C. § 7206(2); and structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3).

On July 26, 2021, Defendants filed a motion for leave to file pretrial motions out of time, which was granted as unopposed. On August 10, 2021, Defendants filed the Motion, which has

1

been fully briefed by the parties. On February 8, 2022, the undersigned heard oral argument on this and other pending motions. Mrs. Goss appeared in person with her attorneys, Melanie Morgan and Branden Bell, Mr. Goss appeared in person with his attorneys, Christopher Plumlee, Lisa Geary, and Wendy Johnson, and the Government was represented by Marco Palmieri, Randy Eggert, Shannon Kempf, and Stephanie Mazzanti.

    **II.**     **Applicable Law**

The right to be charged by a grand jury in an indictment is guaranteed by the United States Constitution for certain crimes. The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Sixth Amendment further guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and the cause of the accusation." U.S. Const. amend. VI. These Constitutional requirements are implemented by Rule 7(c) of the Federal Rules of Criminal Procedure, which specifies that "the indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

In evaluating motions to dismiss an indictment for insufficiency, the Court makes its determination from the face of a criminal indictment. There is no summary judgment procedure in criminal cases nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995). The Court's review is limited to the four corners of the indictment, accepting the Government's allegations as true. *See United States v. Steffen*, 687 F.3d 1104, 1117 n.2 (8th Cir. 2012). An indictment is legally sufficient on its face if (1) it contains all the essential elements of the offense charged, (2) fairly informs the defendant of the charges against which he must defend, and (3) alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. *Id.* at

2

1109. A slightly greater level of detail is required for the bank, mail, or wire fraud statutes, for which an indictment must "specify facts . . . with such reasonable particularity as will apprise the defendant, with reasonable certainty, of the nature of the accusation and as will enable the court to say that the facts stated are sufficient in law to support a conviction." *Id.* at 1113 (cleaned up).

"An indictment which tracks the statutory language is ordinarily sufficient." *United States v. Prelogar*, 996 F.3d 526, 531 (8th Cir. 2021) (cleaned up). "An indictment should not be read in a hyper technical fashion and should be deemed sufficient unless no reasonable construction can be said to charge the offense." *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir. 1998) (cleaned up); *see also United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). The indictment may set out the elements in the words of the statute itself, if "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Nabors*, 45 F. 3d at 240. It is not necessary, however, "that a particular word or phrase appear in the indictment when the element is alleged in a form which substantially states the element." *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir. 1988) (cleaned up). "An indictment will ordinarily be held sufficient unless it is so defective" that no reasonable construction could charge the offense. *Sewell*, 513 F.3d at 821.

### III. Discussion

In the Motion, Defendants move to dismiss portions of count 1, along with all of counts 5-7, 8-12, 16, 17, 21, and 22 because they do not sufficiently allege the essential elements of federal funds bribery or honest services fraud.[1] Specifically, Defendants argue that (1) the federal funds bribery statute forbids paying a bribe to "an agent" of an entity that conducts a transaction, and here, the alleged payees (state legislators) were not "agents" of the state-government agency or

---

[1] Count 1 charges conspiracy in violation of 18 U.S.C. § 371. Counts 5-7 involve charges of federal funds bribery in violation of 18 U.S.C. §§ 666(a)(2) and 2, and the counts 8-12, 16, 17, 21, and 22, involve charges of honest services wire fraud in violation of 18 U.S.C. §§ 1343, 1346, and 2.

3

nonprofit organization that conducted the transaction; (2) the federal funds bribery statute prohibits paying a bribe for an "official act," however, the acts of the payees here merely expressed support—writing letters or making phone calls—and such does not constitute an "official act" under the statute; (3) the GIF-related, federal funds bribery charges fail to allege a "quid-pro-quo agreement" required under 18 U.S.C. § 666(a)(2); (4) portions of count 1, count 6 and count 7, relating to the hiring of person 14 and paying a retainer to co-defendant Hutchinson, should be dismissed because § 666(c) explicitly exempts employment or "bona fide salary, wages, fees, or other compensation"; (5) count 1 fails to allege an "agreement" to violate the federal funds bribery statute; and (6) the honest services fraud charges should be dismissed because the state legislators performed unofficial acts and even if the acts constituted official acts, the alleged payments were not bribes since it did not induce future acts, and thus, must be construed as gratuities.

In 78 numbered paragraphs, count 1 of the indictment charges a violation of 18 U.S.C. § 371, and relevant here, alleges that Defendants conspired: (1) "to corruptly give, offer, and agree to give, anything of value to any person, intending to influence and reward agents of the state of Arkansas—including Hutchinson, Woods,[2] Neal,[3] and Wilkins[4]—in connection with a business, transaction, or series of transactions of the state of Arkansas involving $5,000 or more" in violation of 18 U.S.C. § 666(a)(2); (2) for Hutchinson, Woods, Neal, Wilkins, and others, "as agents of the state of Arkansas, to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with a business, transaction, or series of transactions of $5,000 or more" in violation of 18 U.S.C. § 666(a)(1)(B); and (3) "to devise and intend to devise a scheme to defraud and

---

[2] Jonathan Earl Woods ("Woods") served as an Arkansas state senator from 2013 to 2017.
[3] Micah Neal ("Neal") served as an Arkansas state representative from 2013 to 2017.
[4] Henry "Hank" Wilkins IV ("Wilkins") served as an Arkansas state legislator from 1999 to 2011, serving as a representative from 1999-2001 and 2011-2015, and as a senator from 2001-2011.

4

deprive the citizens of Arkansas of their right to the honest services of [Arkansas state legislators], through bribery and kickbacks," in violation of 18 U.S.C. §§ 1343 and 1346. (Doc. 65 at 5-6, 18-19, ¶ 66 b and e.)

> The principal conspiracy statute, 18 U.S.C. § 371, states:
>
> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

The federal funds bribery statute, 18 U.S.C. § 666, in relevant part, provides:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists—
>
>> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
>
> …
>
>> (B) corruptly solicits or demands for the benefit of *any person*, or accepts or agrees to accept, anything of value from *any person*, intending to be influenced or rewarded in connection with *any* business, transaction, or series of transactions of such organization, government, or agency involving *any* thing of value of $5,000 or more; or
>>
>> (2) corruptly gives, offers, or agrees to give *anything of value to any person,* with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or *any* agency thereof*, in connection with any* business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more . . . shall be fined under this title, imprisoned not more than 10 years, or both.
>
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.
>
> (c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

(emphases added). The statute in subsection (d) defines "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." Finally, 18 U.S.C. § 1346 sets forth that a "scheme or artifice to defraud" includes a scheme or

artifice to deprive another of the intangible right of honest services, but such is limited to bribery and kickback schemes. *See Richter v. Adv. Auto Parts, Inc.*, 686 F.3d 847, 856 (8th Cir. 2012) (explaining that 18 U.S.C. § 1346 includes the offense of honest services wire fraud only as applied to bribery and kickback schemes).

Consistent with the statutory language above, to support a wire fraud conspiracy conviction under 18 U.S.C. § 371, the Government must prove the following elements:

(1) Two or more persons, including Defendants, reached an agreement or came to an understanding to devise, make up, or participate in a scheme to commit wire fraud;
(2) Defendants voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and
(3) At the time Defendants joined in the agreement or understanding, Defendants knew the purpose of the agreement or understanding.

*See United States v. Nshanian*, 821 F.3d 1013, 1017 (8th Cir. 2016); *United States v. Hansen*, 791 F.3d 863, 870–71 (8th Cir. 2015). To support a conviction for federal funds bribery, the Government must prove:

> *One*, (name of agent) was an agent of *(name of organization, agency or governmental unit)*;
> *Two*, the defendant corruptly gave, offered, or agreed to give [a] thing of value to (name of recipient) in connection with *the business, transaction, or series of transactions)*
> *Three*, the *(business, transaction(s), or series of transactions)* involved something of a value of $5,000 or more;
> *Four*, *(name of organization, agency or governmental unit)* received benefits in excess of $10,000 in the one-year period beginning *(insert date)*, pursuant to a federal program involving a grant, contract, subsidy, loan guarantee, insurance, or other form of federal assistance.

*See* Model Crim. Jury Instr. 8th Cir. 6.18.666C (2020); *see e.g., United States v. Roberson*, 998 F.3d 1237, 1247 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1109 (2022); *United States v. Nystrom*, 2008 WL 4833984, at *3 (D.S.D. Nov. 4, 2008). Finally, to support a conviction for honest services wire fraud, the Government must prove: Defendants (1) voluntarily and intentionally devised or participated in a scheme to defraud the public of its right to the honest services of a

public official through bribery or kickbacks; (2) with the intent to defraud; (3) where the scheme to defraud involved a fraudulent or false material representation or concealment of fact; and (4) the use of an interstate wire in furtherance of, or in an attempt to carry out, some essential step in the scheme. *See United States v. Woods*, 978 F.3d 554, 563 (8th Cir. 2020); Model Crim. Jury Instr. 8th Cir. 6.18.1346 (2020) (instruction for 18 U.S.C. § 1346).

Upon examining the four corners of the indictment, taking the Government's allegations as true, the undersigned finds that the Government has sufficiently alleged the essential elements of each of the challenged counts. The undersigned will briefly address Defendants' arguments.

    a.    **The Indictment Sufficiently Alleges the Elements of Federal Funds Bribery to Support Counts 5, 6, and 7**

In challenging the counts for federal funds bribery, pursuant to § 666, Defendants raise several issues: (1) the alleged payees must be agents of "such" state-government agency or nonprofit agency that conducted the transaction; (2) the alleged bribes must be for "official acts"; (3) the indictment must allege a "*quid pro quo* agreement"; and (4) "bona fide salary, wages, fees, or other compensation" are specifically exempted. Relatedly, Defendants also contend that portions of count 1 should be dismissed because it fails to allege an "agreement" to violate all the elements of § 666.

As to the first issue, Defendants argue that the federal funds bribery statute requires that Defendants "intend[ed] to influence or reward an agent of an entity conducting business or a transaction" and that the Arkansas legislators named in the indictment—Wilkins (count 5), Woods (count 6), and Hutchinson (count 7)—were not agents of "*such* organization, government, or agency" involved in the business, transaction, or series of transactions with the Charity.[5] (Doc.

---

[5] The Charity is Preferred Family Healthcare, Inc. (PFH) a Missouri nonprofit corporation headquartered in Springfield, Missouri. The Charity herein refers to the "entity" known as PFH after April 30, 2015, and known as Alternative Opportunities, Inc. (AO) prior to May 1, 2015. Doc. 65 at 2, ¶1. Mrs. Goss was the Charity's Chief Operating Officer and Mr. Goss was the Charity's Chief Financial Officer. *Id.* ¶¶ 4-5.

102 at 24.) Defendants further explain that the state of Arkansas did not directly engage in any transaction with the Charity, and rather, it was the Arkansas Department of Human Services (ADHS), an agency of the State, and the Northwest Arkansas Economic Development District's (NWAEDD), a nonprofit entity receiving federal funds through the State, that awarded funds of $5,000 or more to the Charity and its subsidiary. Accordingly, Defendants claim that the indictment fails to sufficiently allege a § 666 violation. The undersigned disagrees.

Defendants' arguments selectively emphasize later transactions involving ADHS and NWAEDD, and ignore the plain language of the indictment charging Defendants, *in sum*, with corruptly giving or agreeing to give something of value to any person with the intent to influence Arkansas state legislators, i.e., Wilkins, Woods, and Hutchinson, to misappropriate funds from the GIF (an Arkansas state fund) in connection with a series of transactions of the state of Arkansas, involving ADHS and NWAEDD, to the Charity and its subsidiary. *See* Doc. 65 ¶¶ 36-43, 65-66, 68, 72-74, 88. While the undersigned agrees that there must be intent to influence or reward an agent of the entity in connection with any business, transaction, or series of transactions of *that entity,* the undersigned concludes that the Arkansas state legislators—Wilkins, Woods, and Hutchinson—were *agents of the state of Arkansas*, the state government involved in connection with the *series of transactions* involving GIF funds awarded to the Charity and its subsidiary. Therefore, the indictment properly charges Defendants under § 666.

As discussed earlier, § 666(a)(2) makes it a crime to "corruptly give[ ], offer[ ], or agree[ ] to give *anything of value to any person*, with intent to influence or reward an agent of an organization or of a State . . . government or *any* agency thereof, in connection with *any* business, transaction, or *series of transactions* of such organization, government, or agency involving *anything* of value of $5,000 or more" if the "organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract,

8

subsidy, loan, guarantee, insurance or other form of Federal assistance." 18 U.S.C. § 666(a)(2), (b) (emphases added). Given the repeated use of the unambiguous and unqualified modifier "any" as well as caselaw explaining that the Government is not required to trace federal funds to a specific activity constituting a violation, e.g., local corruption, the scope of § 666 is clearly broad. *See Sabri,* 326 F.3d at 942; *see also United States v. Hines*, 541 F.3d 833, 836 (8th Cir. 2008) ("The Supreme Court upheld our interpretation of § 666 as Congress's attempt to preserve the integrity of federal funds by lessening the burden of federal prosecutors to prove what may be an impossible-to-trace, but very real, impact of local corruption on federal funds."). The statute proscribes corruptly giving or agreeing to give "*anything of value to any person . . . in connection with any business, transaction, or series of transactions.*" The expansive language contemplates and criminalizes complex federal funds bribery schemes even those involving a *series of transactions* or the use of intermediaries. Further, *Sabri* notes that § 666 was enacted to "extend federal bribery prohibitions[,] . . . not to limit the scope of the federal bribery prohibition." 326 F.3d at 944.

Here, consistent with the statutory language, the indictment alleges that Defendants "knowingly and unlawfully conspired . . .to . . .corruptly give, offer, and agree to give, anything of value to any person, intending to influence and reward *agents of the state of Arkansas*—including Hutchinson, Woods, Neal, and Wilkins—in connection with a business transaction and *series of transactions* of *the state of Arkansas* involving $5,000 or more" and that "the state of Arkansas received benefits in excess of $10,000 under Federal programs." *See Prelogar*, 996 F.3d at 531 ("An indictment which tracks the statutory language is ordinarily sufficient.") (cleaned up); (Doc. 65 ¶¶ 43, 66.) The indictment also explains that the GIF "was a fund established by the Arkansas General Assembly consisting of what was commonly referred to as 'surplus' state revenues" and that by virtue of their position, Arkansas legislators, i.e., Wilkins, Woods, and

9

Hutchinson, "exerted substantial control over the distribution of the GIF monies." Doc. 65 ¶¶ 36, 78. The indictment further alleges that the Arkansas General Assembly appropriated GIF monies to the Department of Finance and Administration (DFA) for disbursement to the NWAEDD and that Woods and Neal, in return for kickback payments, directed $400,000 of NWAEDD GIF funds to a subsidiary of the Charity. *Id*. ¶¶ 39, 78, R1-R27. As well, the indictment alleges that Woods "sponsored Senate Bill 250 . . . which appropriated up to $2 million of GIF funds to a division of ADHS"; that Woods, Hutchinson, and Wilkins "voted in favor of the bill"; and that the Charity was awarded a "$1 million GIF grant" from the ADHS GIF funds. *Id*. ¶¶ 39; 77 Q1, Q6-Q8.

Defendants' narrow reading of the statute as requiring the indictment name an agent of ADHS or NWAEDD because those entities were involved in the final transaction steering the GIF funds to the Charity/its subsidiary would effectively insulate any defendant engaging in federal funds bribery where a series of transactions or the use of intermediaries is involved. In other words, should a person seek to bribe or influence an agent of an entity receiving and distributing federal funds, he or she need only be separated through a series of transactions, or better yet, use intermediaries to avoid engaging *directly* the "agent of the entity" ultimately awarding the funds. Such interpretation promotes corruption and misappropriation of federal funds, and, in the undersigned's view, is wholly inconsistent with the plain and unambiguous language of § 666, its purpose, and its legislative history. Based on all the foregoing, the undersigned concludes that the indictment sufficiently alleges that Defendants intended to influence and reward Arkansas state legislators—Wilkins (count 5), Woods (count 6), and Hutchinson (count 7)—as *agents of the state of Arkansas* in connection with a series of transactions involving Arkansas' GIF funds. *See also O'Hagan*, 139 F.3d at 651 ("An indictment should not be read in a hyper technical fashion and should be deemed sufficient unless no reasonable construction can be said to charge the offense.").

Defendants next challenge the federal fund bribery counts by arguing that the alleged bribes

must be for "official acts." Defendants contend that merely expressing support is not an "official act" sufficient to support a § 666 violation. Defendants' arguments again selectively emphasize parts of the indictment (and caselaw) while discounting other portions.

Principally, the undersigned notes that the question of whether an offense under § 666 requires proof of an "official act" is an open question of law in the Eighth Circuit. As the Government outlines in its response, several circuits have held that the definition of "official act" set forth in *McDonnell v. United States* should not extend to § 666. 579 U.S. 550, 574 (2016); (Doc. 124 at 15.) Additionally, in *United States v. Suhl*, the Eighth Circuit specifically declined to address the question, and instead affirmed the defendant's conviction, finding that even "assuming official acts are required . . .the indictment identified the official acts that the defendant sought to influence." 885 F.3d 1106, 1113-14 (8th Cir. 2018) ("We again decline to decide whether the § 201(b)(1) official act element applies to § 666 because we need not answer that question to decide the issue before us."). Similarly, in this case, even assuming, *arguendo*, that "official acts" are required, the undersigned concludes that the indictment sufficiently details instances where Arkansas legislators took "official action" to direct the GIF Funds to Defendants, beyond merely "expressing support."

To illustrate, the indictment states that in exchange for things of value provided by the Defendants (and others), "public officials—including Hutchinson, Woods, Neal, and Wilkins—took favorable legislative and official action on behalf of the Charity [and Defendants] . . . including, but not limited to: holding up agency budgets, initiating legislative audits; sponsoring, filing, and voting for legislation, including shell bills; and influencing and supporting the award of GIF funds." Doc. 65 ¶ 74 (g). As well, as noted earlier, the indictment alleges that Woods "sponsored Senate Bill 250 . . . which appropriated up to $2 million of GIF funds to a division of ADHS"; that Woods, Hutchinson, and Wilkins "voted in favor of the bill"; and that the Charity

11

was awarded a "$1 million GIF grant" from the ADHS GIF funds. *Id.* ¶¶ 39; 77 Q1, Q6-Q8. There are several further examples detailed in the Government's response, but suffice it to say, the indictment does not lack "official action" allegations. Doc. 124 at 17-18.

As to the third issue, Defendants argue that the indictment must allege a *quid pro quo* agreement. Defendants acknowledge that the Eighth Circuit has already held that the Government is not required to prove any *quid pro quo* agreement to sustain a conviction under § 666, and have raised the argument to preserve the argument for appeal. *United States v. Zimmermann*, 509 F.3d 920, 927 (8th Cir. 2007) ("Section 666(a)(1)(B) prohibits both the acceptance of bribes and the acceptance of gratuities intended to be a bonus for taking official action . . . The Government therefore was not required to prove any quid pro quo."). In any case, the undersigned finds that the indictment more than sufficiently alleges a *quid pro quo* arrangement. *See* doc. 65 ¶¶ 68-69, 74 (g), 78, 86.

As to the fourth issue, Defendants argue that "bona fide salary, wages, fees, or other compensation" are specifically exempted under § 666(c), and therefore portions of count 1, count 6 and count 7 should be dismissed as the allegations involve the hiring of Person #14 and Hutchinson (purportedly as the Charity's attorney for a monthly retainer). *See* § 666 (c) ("This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."); (Docs. 102 at 31; 65 ¶¶ 73(d), 74, 78, L1-L11, 84, 88, 98.) Since the indictment alleges that the wages at issue were not *bona fide*, but, rather, were bribes corruptly paid to officials, the Court must accept the Government's allegations as true; and thus, Defendants' challenge at this stage is premature. *Steffen*, 687 F.3d at 1117. Whether the wages or payments are *bona fide,* subject to the exception under § 666(c), is a factual question to be addressed at trial. *See e.g., United States v. Baroni, 909 F.3d 550, 578* (3d Cir. 2018), *overruled on other grounds Kelly v. United States*, 140 S. Ct. 1565 (2020) ("Whether wages

12

are bona fide and earned in the usual course of business is a question of fact for the jury to decide."); *United States v. Williams*, 507 F.3d 905, 909 (5th Cir. 2007).

Finally, Defendants argue that count 1 failed to allege a conspiracy, and more specifically, an "agreement" to violate the §666(a)(2) because the indictment did not allege an agreement to commit *every element* of the substantive offense. Based on the foregoing, *see supra* III(a), the undersigned has already found that indictment sufficiently alleges all the elements of § 666(a), charged in counts 5, 6, and 7. The challenge to count 1 is thus unpersuasive, as the Government has properly alleged an "agreement" to violate § 666. *See* Doc. 65 ¶ 66(c). Accordingly, based on a thorough review, the undersigned concludes that the indictment has sufficiently alleged the elements of § 371 and § 666 to support counts 1, 5, 6 and 7.

### b. The Indictment Sufficiently Alleges the Elements of Honest Services Wire Fraud to Support Counts 8-12, 16, 17, 21, and 22

Defendants contend that the charges for honest services wire fraud, counts 8-12, 16, 17, 21, and 22, should be dismissed because the indictment fails to allege the Arkansas legislators performed "official acts" and (2) that the conduct alleged in the indictment constitutes gratuities, not bribes, and therefore is precluded by 18 U.S.C. § 1346. Both arguments are unpersuasive.

As to the first argument, the undersigned has already found that the indictment sufficiently alleges "official acts" undertaken, beyond merely expressing support, by Arkansas legislators Woods, Hutchinson, Neal, and Wilkins. *See supra* III(a). As to the remaining issue, the undersigned concludes that the conduct alleged in the indictment amount to bribes, not gratuities. To constitute a bribe, "there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404–05 (1999). On the other hand, an illegal gratuity "may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken." *Id.*

13

Defendants selectively emphasize that the Charity received the GIF grants at issue in September and December 2013, and that any "exchange of things of value" e.g., payment to Wilkins, or hiring of Person #14 at Woods' request, only occurred *after* the grants were received, and thus were, at best, gratuities. However, the key differentiator is that bribery requires a *quid pro quo*, or rather, an "exchange for an official act." And here, the undersigned concludes that the indictment more than sufficiently alleges a complex scheme involving an *ongoing* course of conduct, or stream of benefits, wherein the legislators at issue were paid *in exchange* for official action favorable to Charity and Defendants as opportunities arose. *See United States v. Kemp*, 500 F.3d 257, 282 (3d Cir. 2007) ("The quid pro quo requirement is satisfied [if] the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor . . . [Such] may be . . . to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf.") (cleaned up); *Cf. Redzic*, 627 F.3d 683, 692 (8th Cir. 2010) ("[I]t is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action . . . The quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor.") (cleaned up); (Doc 65 at ¶¶ 30, 74, 78.)

Additionally, as noted earlier, the indictment more than sufficiently alleged several instances of *quid pro quo*. As well, contrary to Defendants' arguments about the timing of payments after the grants, the indictment alleges things of value were given to Woods and Wilkins *before* the Charity received the GIF grants in 2013. *Id.* at ¶¶ 30, 74. For example, the indictment states that Woods and Wilkins were allegedly given $35,000 and $20,000 in cash payments, respectively. *Id.* at ¶¶ 78, L1-L11, M1-M2, N1-N5. Finally, the indictment sufficiently alleges "official actions" occurring *after* December 2013 and February 2014, and thus, Defendants'

14

arguments in this regard are lacking. In any case, a particular word or phrase is not required where the element is alleged in a form which substantially states the element. Moreover, an indictment is not to be read in a hyper technical fashion, and is deemed sufficient unless no reasonable construction can charge the offense. Accordingly, based on a thorough review, the undersigned concludes that the indictment has sufficiently alleged the elements of § 1346 to support each of the challenged counts.

## IV. Conclusion

Based on the foregoing, it is hereby **RECOMMENDED** that the Joint Motion to Dismiss the GIF-Related Bribery Charges (doc. 102) be **DENIED**.

*/s/ David P. Rush*
**DAVID P. RUSH,**
**UNITED STATES MAGISTRATE JUDGE**

Date: May 24, 2022